UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AHMED BARAGHITH,

   Plaintiff,

v.

QARGO COFFEE, INC., and
MARK BASTOROUS a/k/a Mark
Bass and Mamdoh Bastorous, an
individual,

   Defendants.

_____/

Case No.
Hon.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Ahmed Baraghith ("Plaintiff"), by and through his undersigned legal

counsel, states the following claims against Defendants Qargo Coffee, Inc. ("Qargo

Coffee") and Mark Bastorous a/k/a Mark Bass and Mamdoh Bastorous ("Mr. Bass")

(Qargo Coffee and Mr. Bass are sometimes collectively referred to herein as the

"Defendants").

### Introduction

1. This case concerns a franchisor (Qargo Coffee) and one of its

executives (Mr. Bass) violating the Federal Trade Commission's ("FTC") Franchise

Rule, as found at 16 C.F.R. 436 *et seq.*, and certain state laws, by fraudulently

inducing Plaintiff – who previously had no experience in operating a coffee shop or

other franchised business – into two franchise agreements for the operation of Qargo Coffee shops and other ancillary arrangements.

2.      Defendants portray the Qargo Coffee shops as a premium coffee chain focusing on Italian coffee, pastries, and providing an inviting atmosphere for work or relaxation.

3.      When pitching Plaintiff on joining the Qargo Coffee franchise system, Defendants provided Plaintiff with Qargo Coffee Franchise Disclosure Documents ("FDDs") that were inaccurate, incomplete, unfair, deceptive, and/or misleading.

4.      Defendants also made untrue promises and representations outside the four corners of the Qargo Coffee FDD while convincing Plaintiff to join the Qargo Coffee franchise system.

5.      When entering into the two franchise agreements with Qargo Coffee and other ancillary arrangements, Plaintiff reasonably and detrimentally relied on all the inaccurate, incomplete, unfair, deceptive, and/or misleading information that Defendants provided to him, and on all the untrue promises and representations otherwise made by Defendants to Plaintiff.

6.      In addition to the foregoing, Qargo Coffee has breached contractual obligations to Plaintiff by, among other things:

A.     Changing the entire premise of the Qargo Coffee franchise system after Plaintiff signed his Franchise Agreements from offering only high-end, premium "Lavazza" coffee beverages to offering only Kimbo branded coffee beverages, a brand which has a significantly lower public perception in terms of image and quality as compared to Lavazza.

B.     Providing inaccurate cost/investment information to Plaintiff in connection with opening his Qargo Coffee stores.

C.     Charging fees and costs that are not set forth or otherwise memorialized/reserved in the applicable Franchise Agreement.

D.     Providing substandard training by requiring Plaintiff to attend training in the country of Columbia instead of at the state-side locations specified in the FDD.

E.     Requiring Plaintiff to sell menu items that are not exclusive to the Qargo Coffee franchise system.

F.     Requiring Plaintiff to sell menu items that are not advertised.

G.     Requiring Plaintiff to purchase fixtures for his Qargo Coffee shop that were supposed to be made in the United State but that were instead made in China at much lower quality standards than fixtures made in the United States.

H.     Requiring Plaintiff to purchase certain items at inflated prices.

I.     Requiring Plaintiff to purchase defective coffee-making equipment that does not hold up to the demands of being operated in a commercial coffee shop.

J.     Upon information and belief, misappropriating System Wide Marketing Fund monies for the purpose of marketing Qargo Coffee franchises to prospective franchisees.

7.     The unlawful acts and practices of Defendants have resulted in material and significant financial losses and emotional hardship to Plaintiff and the unjust enrichment of Defendants.

8.     Through this action, Plaintiff seeks, among other things: disgorgement of unlawfully obtained and retained monies; rescission of the Franchise Agreements and other ancillary arrangements; damages, as provided for under applicable law; interest; and attorneys' fees and costs, also allowed and recoverable under applicable law.

## Parties

9.     Plaintiff is an individual and is a citizen of the State of Michigan and resides within this District.  Plaintiff currently operates a Qargo Coffee shop within this District in Dearborn, Michigan and is in the process of opening another Qargo Coffee shop within this District in Canton, Michigan.

4

10.     Qargo Coffee is a Delaware corporation with its principal place of business at 701 Brickell Avenue, Suite 1150, Miami, Florida 33131.  Qargo Coffee, in connection with the matters alleged in this Complaint, transacts or has transacted business in this District.

11.     Mr. Bass is one of the co-founders of Qargo Coffee and has served as the company's Development Manager since at least July 2020.  Upon information and belief, Mr. Bass is a citizen and resident of the State of Florida.  At all times relevant to this Complaint, Mr. Bass, acting alone or in concert with others, has formulated, directed, controlled, or had the authority to control, or participated in the acts and practices of Qargo Coffee, including the acts and practices described herein.  Mr. Bass, in connection with the matters alleged in this Complaint, transacts or has transacted business in this District.

## Jurisdiction and Venue

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13.     Venue lies in this District pursuant to 28 U.S.C. § 1391.  Specifically, the franchised businesses and related properties are all located in this District and a substantial part of the events or omissions giving rise to the claims asserted by Plaintiff occurred in this District.

5

14.     Venue is also appropriate in this District because M.C.L. § 445.1527(f) voids any provision in a franchise agreement that requires arbitration or litigation to be conducted outside of the State of Michigan. *See also Lakeside Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209 (6th. Cir. 2021).

## General Factual Allegations

## Overview of Applicable Franchise Laws

15.     Due to the "serious information imbalance . . . between prospective franchisees and their franchisors" that had allowed "abuses" to "flourish[ ]" in the franchise market, the FTC issued the Franchise Rule in 1978. Original Franchise Rule Statement of Basis and Purpose, 43 FR 59614, 59624 (Dec. 21, 1978).

16.     The Franchise Rule is a pre-sale disclosure requirement that obligates franchisors to furnish prospective franchisees with a Franchise Disclosure Document (often referred to as an "FDD") no fewer than 14 days before the prospective franchisee either pays any required fee or enters into a binding agreement. The FDD must contain 23 categories of significant information, including details about the franchisor's leadership, prior or pending litigation and bankruptcy matters, and the typical timeframe for a franchise to become operational.

17.     The purpose of the Franchise Rule is to safeguard individuals considering the purchase of a franchise by ensuring that franchisors provide transparent and accurate disclosures about the opportunity. Access to this information

is essential for prospective franchisees to assess the potential expenses and risks involved and to make meaningful comparisons among different franchise options.

18.    Michigan also has franchise legislation, which is known as the Michigan Franchise Investment Law ("MFIL") and which was originally passed in 1974 (prior to the federal Franchise Rule).  M.C.L. § 445.1501, *et seq.*

19.    MFIL was one of Michigan's first comprehensive statutes aimed at governing the offer, sale, and purchase of franchise businesses, with the goal of preventing fraud and protecting potential franchisees.

20.    MFIL includes definitions, prohibited certain unfair practices, and imposed regulatory duties on the State.

21.    MFIL was designed to address concerns about franchisors misrepresenting opportunities and coercing unsophisticated buyers — issues similar to the reasons behind the later federal franchise disclosure requirements. To this end, MFIL requires disclosures and sets standards for transparency in franchise transactions.

22.    Any franchise opportunity offered by a franchisor in Michigan must comply with the Federal Trade Commission's Franchise Rule, as well as MFIL.  For example, both the federal Franchise Rule and MFIL require a franchisor to provide a prospective franchisee with a current FDD containing specified information about the franchise offering. 16 C.F.R. § 436.2(a); M.C.L. § 445.1508(1). These

7

disclosures must be truthful, complete, and not misleading.  16 C.F.R. § 436.1(a) and (b); M.C.L. § 445.1505.

23.     Additionally, the federal Franchise Rule prohibits franchisors and their representatives from making financial performance representations that are not expressly included within the Franchise Disclosure Document.  Specifically, under 16 C.F.R. § 436.9(c), it is an unfair or deceptive practice for a covered franchise seller to provide financial performance representations to prospective franchisees unless the franchisor has a reasonable basis and written support for the claim at the time it is made, and the representation appears in Item 19 of the FDD.

24.     Due to the nature of the typical franchise system, it is essential that the franchisor's representations are truthful and reliable—prospective franchisees rely on this information when entering long-term contracts and investing significant amounts of money, often reaching hundreds of thousands of dollars, and may incur considerable debt in the process.

25.     Under both the federal Franchise Rule and MFIL, potential franchisees must be given a fair and reasonable chance to evaluate the franchise opportunity, with access to all material facts and relevant information, before deciding whether to enter into a franchise agreement with the franchisor.

**Mr. Bass's History with the Notorious BurgerIM Franchise System**

26.    Mr. Bass has what can only be described as a very checkered past in the franchise space.  In 2014, he and his wife, Bernadette Bass, together with business partners, launched a Steak 'n Shake franchise through an entity named Socal SNS LLC. The restaurant soon encountered financial difficulties. In September 2016, a court in New York issued a judgment of $285,000 against the Basses, not Socal SNS LLC, in favor of a secured creditor who had acquired $380,000 of the outlet's future accounts receivable.

27.    On December 8, 2017, the Basses filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Central District of California. See *In re: Bastorous*, No. 6:17-bk-20092-MH (C.D. Cal. 2017).

28.    Around 2017, on the franchisor side, Mr. Bass took on the role of Florida development manager for the notorious BurgerIM franchise system. In connection with this work, he established two limited liability companies. He acted as the manager and registered agent for Burgerim Florida LLC, a Florida limited liability company, formed on June 5, 2017, which was voluntarily dissolved on August 21, 2017. Additionally, he served as the managing member and registered agent for Burgerim Florida, LLC, a Delaware limited liability company, that he registered as a foreign entity with the Florida Department of State on September 26,

9

2017. On or about May 21, 2019, Mark Bass submitted a filing to reinstate the Delaware limited liability company with the Florida Department of State.

29.     Between 2017 and 2019, BurgerIM generated tens of millions of dollars from the sale of over 1,500 franchise locations throughout the United States. However, the majority of these locations were never actually opened. Regulatory authorities in multiple states took action: the Maryland Attorney General, the Washington Department of Financial Institutions, and the Indiana Secretary of State each issued orders preventing Burgerim Group USA from selling franchises in their states due to violations of state franchise laws. Furthermore, on February 6, 2021, the California Department of Financial Protection and Innovation issued a citation and a cease-and-desist order against Burgerim Group USA, seeking both injunctive and monetary remedies under California law.

30.     On February 7, 2022, the United States Department of Justice, representing the Federal Trade Commission ("FTC"), filed a lawsuit against Burgerim Group USA and its CEO, Oren Loni, claiming violations of the FTC Franchise Rule and Section 5 of the FTC Act. On November 20, 2023, the United States District Court for the Central District of California approved a stipulated permanent injunction against the individual defendant, and on January 19, 2024, the court entered a default judgment against the corporate defendants.

31.    Even though Mr. Bass was not involved as an individual party in any of the BurgerIM proceedings described herein, the California Department of Financial Protection and Innovation's order determined that BurgerIM's violations of state law included the company's failure to disclose his position as Florida development manager.

### Defendants' Development of the Qargo Coffee Franchise System

32.    Beginning in May 2020, Defendants started offering and selling the Qargo Coffee franchise opportunity to potential franchisees across the United States.

33.    In connection with establishing the Qargo Coffee franchise system, Mr. Bass signed, on behalf of Qargo Coffee, a "National Supplier Agreement" with Lavazza Premium Coffees Corp.  That agreement outlined the terms under which Qargo Coffee, Inc. would buy drip coffee and espresso from Lavazza, while Lavazza would provide coffee-making equipment on loan to Qargo Coffee, Inc. for use in its company-owned locations.  However, upon information and belief, Qargo Coffee has never owned any of its locations, opting instead to build its business through a franchise system.

34.    Qargo Coffee purports to focus on providing its customers with "Italy's Finest Coffee & Pastries" by ostensibly "[c]apturing the essence of Italian tradition and culture with unique recipes, taken to a new level with premium coffee and

11

freshly baked Italian pastries, creating a wide spectrum of flavor profiles and textures." (https://www.qargocoffee.com, last visited February 22, 2026.)

35.     In line with the foregoing, Qargo Coffee purports to provide customers with a range of Italian specialty coffee products, including drip coffee and espresso-based beverages.  These drinks are supposed to be prepared using professional-grade coffee-making equipment supplied through Qargo Coffee's designated suppliers.  In addition to beverages, Qargo Coffee purports to offer related menu items commonly found in coffee shops, such as teas, smoothies, and light food options.

### The FTC Brings Enforcement Action against Qargo Coffee and Its Principals for Deceptive Business Practices

36.     On October 16, 2024, the FTC filed a lawsuit in the United States District Court for the Southern District of Florida against Qargo Coffee, Mr. Bass, his wife Bernadette Bastorous, and Samir Shenouda.  **(Exhibit 1, Complaint for Permanent Injunction, Monetary Judgment, and Other Relief.)**  This lawsuit detailed numerous instances of deceptive business practices that Qargo Coffee and its principals have employed in offering/selling Qargo Coffee franchises and sought a permanent injunction, monetary judgment, and other relief.  (***Id.***)

37.     On the same day the FTC's complaint was filed, a Notice of Settlement was filed and on October 17, 2024, a Stipulated Order for Permanent Injunction, Monetary Judgment, and other Relief was signed by the court.  **(Exhibit 2, Stipulated Order for Permanent Injunction, Monetary Judgment, and Other**

**Relief.)**  This Stipulated Order required Qargo Coffee to offer rescission of its franchise agreement to its franchisees as well as a prohibition on enforcement of covenants not to compete and non-compete agreements for franchisees who opted to rescind or cancel their Qargo Coffee franchise agreements.  ***(Id.* at Sections III and IV.)**  The Stipulated Order also provided for a monetary judgment against Qargo Coffee and its principals, including Mr. Bass and his wife.  ***(Id.* at Section V.)**

38.    Rather than follow the letter and spirit of the Stipulated Order, Defendants pressured Plaintiff to sign a purported Voluntary Refusal of Offer to Rescind Franchise Agreement which contained a purported and detailed release of Defendants for any claims related to the Qargo Franchise system.  **(Exhibit 3, Voluntary Refusal of Offer to Rescind Franchise Agreement.)**  This document was not supported by consideration and is therefore void *ab initio*.

### Plaintiff's Qargo Coffee Franchises

39.    On or about November 9, 2023, Plaintiff signed a Franchise Agreement for a Qargo Coffee store located in Dearborn, Michigan and on or about March 21, 2024, Plaintiff signed a Franchise Agreement for a Qargo Coffee store located in Canton, Michigan.  **(Exhibit 4, Franchise Agreement for Dearborn Store; Exhibit 5, Franchise Agreement for Canton Store.)**  Plaintiff paid Qargo Coffee an initial franchise fee of $55,000.00 for the Dearborn store and an initial franchise fee of $27,500.00 for the Canton store.

13

40.     Prior to Plaintiff signing Franchise Agreements, Defendants provided Plaintiff with an FDD that contained misleading and false representations regarding what Plaintiff could expect when operating a Qargo Coffee franchise.  (**Exhibit 6, Qargo Coffee FDD.**)

41.     These representations included representing that the Qargo Coffee franchise system would be based on selling Lavazza coffee products, providing inaccurate start-up/investment costs, misrepresenting the time it would take to open a Qargo Coffee store, and misrepresentation of the locations and scope of franchisee training and support.  The FDDs also failed to make any mention of Mr. Bass's employment with the BurgerIM franchise system or any of the litigation involving that system.

42.     Defendants also made a number of misrepresentations outside of the four corners of the FDDs to Plaintiff in connection with the details of the Qargo Coffee franchise system.

43.     Perhaps the biggest misrepresentation that Defendants made to Plaintiff was that the Qargo Coffee franchise system would exclusively sell Lavazza coffee products, which is a high-end, premium coffee brand.  In addition to making this misrepresentation in the FDDs, Mr. Bass personally assured Plaintiff that the Qargo Coffee franchise system would be based on selling Lavazza coffee products.  This misrepresentation was a crucial component in Plaintiff's decision to become a Qargo

14

Coffee franchisee because of the well-known nature of the Lavazza coffee brand and its worldwide popularity.  Plaintiff's Dearborn store was even initially constructed with Lavazza-branded signage **(Exhibit 7, Photos)**, which was later removed after Defendants unilaterally stopped selling Lavazza-branded coffee products.

44.    Defendants made other misrepresentations to Plaintiff, including providing inaccurate start-up cost/investment information to Plaintiff in connection with the Qargo Coffee franchise system, leading Plaintiff to believe that the menu offerings in his Qargo Coffee stores would be exclusive to the Qargo Coffee brand, providing Plaintiff with inaccurate information regarding the quality of the materials and fixtures that would be used to construct/build out his Qargo Coffee stores, and misleading Plaintiff regarding the level of training and support that would be provided to him as a Qargo Coffee franchisee.

45.    Plaintiff reasonably relied on Defendants' misrepresentations in entering in the Franchise Agreements and would not have entered into the Franchise Agreements if Defendants had not provided him with inaccurate and misleading information regarding the various aspects of the Qargo Coffee franchise system.

46.    After signing the Franchise Agreements, Plaintiff began to discover that Defendants had seriously misled him regarding the Qargo Coffee franchise system.

47.    For example, Plaintiff discovered that the start-up cost/investment figures that Defendant had provided to him were inaccurate.  Defendants had

represented to Plaintiff that the initial investment for getting the Canton store up and running would be approximately $450,000.00.  In fact, the cost to-date to build out the Canton store has exceeded $600,000.00 and the store has not even passed city inspections due to deficient materials that Defendants required Plaintiff to purchase.

48.     Defendants have also charged Plaintiff fees/costs that are not set forth or otherwise memorialized in Plaintiff's Franchise Agreements, including for example tariff charges and technician charges/fees for repairing defective equipment that Defendants required Plaintiff to purchase.

49.     Defendants also provided substandard and deficient training to Plaintiff by requiring him to attend training in the country of Columbia instead of the state-side locations represented in the Qargo Coffee FDD.  The follow-up support that Qargo Coffee is contractually obligated to provide has also been seriously deficient as a result of said support being based out of Columbia.

50.     Defendants have also advertised various menu items on its website that are not actually available at Qargo Coffee stores, which has caused confusion and negative customer experiences.

51.     Defendants have required equipment and fixtures for his Qargo Coffee stores that were supposed to be made in the United States but that were instead made in China at much lower quality standards than fixtures made in the United States. This particular issue has delayed the opening of Plaintiff's Canton store because the

16

fixtures purchased at Defendants' direction do not meet the specifications/requirements for passing Canton's code inspections.

52.     In Plaintiff's Dearborn store, the LED menu and exterior signage that Defendants required Plaintiff to purchase from a Chinese supplier is defective and often does not function as intended or needed.

53.     Defendants have required Plaintiff to purchase various supplies through Defendants at inflated prices, including coffee beans, coffee mugs, plates, and utensils even though Plaintiff could obtain these items from one or more third parties at pricing that is less than what Defendants are charging Plaintiff.  Upon information and belief, Defendants are directly profiting from these inflated prices by retaining the spread of the actual price of these items from various third parties and the price that Defendants are charging Plaintiff for these items.

54.     Defendants have also required Plaintiff to purchase defective coffee-making equipment that does not hold up to the demands of being operated in a commercial coffee shop.  The technicians designated by Defendants for servicing this equipment are either unavailable or unable to properly service or repair the equipment.

55.     Perhaps the most egregious aspect of Defendants' conduct is that after Plaintiff signed his Franchise Agreements, Qargo Coffee unilaterally stopped selling Lavazza-branded coffee products and instead switched to selling Kimbo coffee

products exclusively.  The Kimbo coffee brand does not have the same brand recognition or popularity as the Lavazza brand and is a serious downgrade in the actual and perceived quality and value of the Qargo Coffee customer experience.

56.    Plaintiff's Canton store has not been able to open because the fixtures that Defendants have required Plaintiff to purchase for completing the buildout of the store do not meet local code requirements; however, Defendants blame Plaintiff for the failure to open despite having required him to purchase the incompatible fixtures.

57.    Had Plaintiff known then what he knows now, he would have never entered into either Franchise Agreement with Qargo Coffee.

58.    Defendants knew that the representations and commitments that were being made were inaccurate, incomplete, unfair, deceptive, and/or misleading.

59.    As Plaintiff has become aware of Defendants' wrongful conduct and attempted to assert his legal rights, Mr. Bass has become increasingly abusive in his communications and treatment of Plaintiff, sending him a steady stream of highly unprofessional, profanity-laden, offensive messages, claiming, among other things, that Plaintiff is a "filthy racist," "stupid," "brainless," "illiterate," "evil," is going to "hell," and acts like a "girl." **(Exhibit 8, Messages from Mark Bass.)** Mr. Bass also seems to have developed a fixation with Plaintiff's

18

son and regularly sends Plaintiff messages denouncing Plaintiff for supposedly having his son work in what Mr. Bass apparently deems unsafe minority neighborhoods. **(Exhibit 9, Messages from Mark Bass.)**

60. Defendants have also sent Plaintiff spurious notices of default, combined with communications pressuring him to sell his Qargo Coffee franchise. **(Exhibit 10, Messages from Mark Bass.)**

## COUNT I
## BREACH OF CONTRACT
### (Against Qargo Coffee)

61. Plaintiff incorporates the preceding allegations by reference.

62. Plaintiff entered into the Franchise Agreements with Qargo Coffee based on offer, acceptance, and consideration.

63. Plaintiff has performed all its obligations in accordance with the Franchise Agreements and is not in breach, material or otherwise, under any of the Franchise Agreements.

64. Qargo Coffee, in comparison, has willfully, capriciously, and without cause materially breached various provisions of the Franchise Agreements as previously set forth herein.

65. As a direct and proximate result of Qargo Coffee's breaches, Plaintiff has suffered damages and will continue to suffer damages in the future.

66.     On account of Qargo Coffee's breaches, Plaintiff is entitled to damages, as well as to legal rescission of the Franchise Agreements.

## COUNT II
## BREACH OF IMPLIED DUTY OF
## GOOD FAITH AND FAIR DEALING
### (Against Qargo Coffee)

67.     Plaintiff incorporates the preceding allegations by reference.

68.     The Franchise Agreements in question, and the relationship between Plaintiff and Qargo Coffee, give rise to a mutually implied covenant of good faith and fair dealing.

69.     Qargo Coffee had, and continues to have, a duty to act in good faith, and to deal fairly, with Plaintiff.

70.     Additionally, Qargo Coffee engaged, and continues to engage, in arbitrary or unreasonable conduct that had or has the effect of preventing Plaintiff from receiving the intended fruits of the Franchise Agreements.

71.     By engaging in the acts and tactics detailed above, Qargo Coffee has violated the implied covenant of good faith and fair dealing.

72.     As a direct and proximate result of Qargo Coffee's unlawful conduct, Plaintiff has suffered damages and will continue to suffer damages in the future.

## COUNT III
## FRAUD, FRAUDULENT INDUCEMENT,
## AND MISREPRESENTATION
### (Against Both Defendants)

73.     Plaintiff incorporates the preceding allegations by reference.

74.     Defendants made representations regarding various aspects of the Qargo Coffee franchise system to Plaintiff, which Defendants knew or believed were false.

75.     Defendants knew or believed that the representations made by them were false, or that the representations were made with reckless indifference to the truth.

76.     Defendants, as set forth above, omitted information from the FDDs that were furnished to Plaintiff, in contravention of relevant federal and state law.

77.     These misrepresentations and omissions by Defendants were material and were made in order to induce Plaintiff into a franchisor-franchisee relationship and did so induce Plaintiff.

78.     Plaintiff reasonably and justifiably relied upon Defendants' misrepresentations and omissions.

79.     Plaintiff has suffered injury and damages, and continues to suffer damages, as a result of its reasonable reliance on these misrepresentations and omissions.

80.     Plaintiff is entitled to damages and is also entitled to equitable rescission of the Franchise Agreements, based on the fraudulent misrepresentations of Defendants.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
### (Against Both Defendants)

81.     Plaintiff incorporates the preceding allegations by reference.

82.     Defendants, in courting Plaintiff to do business with them, had a duty to provide Plaintiff with accurate information.

83.     Defendants, instead of providing accurate information, supplied false and/or misleading information to Plaintiff, as alleged above.

84.     In providing the information to Plaintiff, Defendants failed to exercise reasonable care in either obtaining the information that they relayed to Plaintiff or in communicating to Plaintiff.  Plaintiff justifiably relied upon the information provided by Defendants, which proved to be false.

85.     As a result of his reasonable and justifiable reliance, Plaintiff has suffered pecuniary loss.

86.     Plaintiff is entitled to damages as a result of Defendants' wrongful conduct and is also entitled to equitable rescission of the Franchise Agreements, based on the fraudulent misrepresentations of Defendants.

22

## COUNT V
## UNJUST ENRICHMENT
### (Against Qargo Coffee)

87.    Plaintiff incorporates the preceding allegations by reference.

88.    Qargo Coffee, by its actions and tactics, has been enriched from monies wrongfully taken from Plaintiff.

89.    Plaintiff has suffered a direct pecuniary loss as a result of having these monies wrongfully taken and retained.

90.    It is unjust for Qargo Coffee to retain these monies, which were obtained by misrepresentation and false pretenses.

91.    There is an absence of a remedy provided by law for this unjust enrichment.

92.    Plaintiff is entitled to relief for this unjust enrichment in an amount equal to the benefits unjustly retained, plus interest, costs, and expenses.

## COUNT VI
## VIOLATION OF THE MICHIGAN
## FRANCHISE INVESTMENT LAW
## M.C.L. § 445.1505.
### (Against Both Defendants)

93.    Plaintiff incorporates the preceding allegations by reference.

94.    Qargo Coffee is a franchisor under MFIL, M.C.L. § 445.1501, et seq.

95.    Plaintiff is a franchisee of Qargo Coffee under MFIL.

23

96.     MFIL applies to "all written or oral arrangements between a franchisor and franchisee in connection with the offer or sale of a franchise, including, though not limited to, the franchise offering, the franchise agreement, sales of goods or services, leases and mortgages of real or personal property, promises to pay, security interests, pledges, insurance, advertising, construction or installation contracts, servicing contracts, and all other arrangements in which the franchisor or subfranchisor has an interest." M.C.L. § 445.1504(1).

97.     M.C.L. § 445.1505 provides as follows:

A person shall not, in connection with the filing, offer, sale, or purchase of any franchise, directly or indirectly:

(a)     Employ any device, scheme, or artifice to defraud.

(b)     Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

(c)     Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

98.     Defendants violated the MFIL when they induced Plaintiff into a franchise relationship with Qargo Coffee.

99.   Plaintiff relied on the information and representations furnished as being accurate and complete when deciding to invest in the franchise opportunities and has suffered damages on account of its reliance.

100.   As a result of Defendants' violations of the MFIL (including Section 5), Plaintiff has suffered damages.

101.   Plaintiff is entitled to relief available under the MFIL, including recission and damages plus interest from the date of purchase at the rate of 12% plus reasonable attorneys' fees and court costs pursuant to M.C.L. §445.1531.

### COUNT VII
### VIOLATION OF THE MICHIGAN
### FRANCHISE INVESTMENT
### LAW M.C.L. § 445.1508.
### (Both Defendants)

102.   Plaintiff incorporates the preceding allegations by reference.

103.   M.C.L.§ 445.1508 mandates that a franchisor meet certain disclosure obligations in connection with its offering of a franchise opportunity.

104.   Under M.C.L. § 445.1508, a franchisor may use a franchise disclosure document prepared pursuant to the Franchise Rule to meet its disclosure obligations required by MFIL.

105.   In violation of M.C.L. § 445.1508, Qargo Coffee did not, as pleaded above, meet its disclosure obligations in connection with its offering of the Qargo

25

Coffee franchises to Plaintiff because certain information contained in the FDDs was inaccurate, incomplete, unfair, deceptive, and/or misleading.

106.   As a result of Defendants' violations of the MFIL (including Section 8), Plaintiff has suffered damages.

107.   Plaintiff is entitled to relief available under the MFIL, including rescission and damages plus interest from the date of purchase at the rate of 12% plus reasonable attorneys' fees and court costs pursuant to M.C.L. §445.1531.

**COUNT VIII**
**VIOLATION OF THE MICHIGAN**
**FRANCHISE INVESTMENT LAW**
**M.C.L. § 445.1532.**
**(Against Mr. Bass)**

108.   Plaintiff incorporates the preceding allegations by reference.

109.   Mr. Bass was an executive of Qargo Coffee during the time Plaintiff was induced into entering into the two Franchise Agreements at issue.  Indeed, Mr. Bass has been Plaintiff's primary contact in the Qargo Coffee franchise system.

110.   M.C.L. § 445.1532 provides as follows:

> A person who directly or indirectly controls a person liable under this act, a partner in a firm so liable, a principal executive officer or director of a corporation so liable, a person occupying a similar status or performing similar functions, an employee of a person so liable who materially aids in the act or transaction

26

constituting the violation, is also liable jointly and severally with and to the same extent as the person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

111.    Mr. Bass violated the MFIL when he induced Plaintiff into entering into the Franchise Agreements with Qargo Coffee.

112.    Plaintiff relied on the information and representations furnished as accurate and complete when deciding to invest in the franchise opportunities and has suffered damages on account of his reliance when the information and representations proved to be false, misleading, and incomplete.

113.    As a result of Defendants' violations of the MFIL (including Section 32), Plaintiff has suffered damages, and Plaintiff is entitled to relief available under the MFIL, including recission and damages plus interest from the date of purchase at the rate of 12% plus reasonable attorneys' fees and court costs pursuant to M.C.L. § 445.1531.

**COUNT X**
**VIOLATION OF THE**
**DELAWARE UNIFORM DECEPTIVE**
**TRADE PRACTIES ACT**
**6 DEL. C. § 2531 et seq.**
**(Against Both Defendants)**

114.    Plaintiff incorporates the preceding allegations by reference.

115.     Delaware's Uniform Deceptive Trade Practices Act ("UDTP"), §
2532, states, in pertinent part, as follows:

> A person engages in a deceptive trade practice when, in the
> course of a business, vocation, or occupation, that person:
>
> ...
>
> (2) Causes likelihood of confusion or of misunderstanding as to the
> source, sponsorship, approval, or certification of goods or services;
>
> (5) Represents that goods or services have sponsorship, approval,
> characteristics, ingredients, uses, benefits, or quantities that they do not
> have ... or
>
> (12) Engages in any other conduct which similarly creates a likelihood
> of confusion or misunderstanding.

116.   Defendants, as alleged above, made representations regarding various
aspects of the Qargo Coffee franchises to Plaintiff, which Defendants knew or
believed were false.

117.   Defendants, as also detailed above, omitted information from the
franchise agreements that they provided to Plaintiff, which they were required to
disclose under relevant federal and state law.

118.   In making these misrepresentations, Defendant caused a likelihood or a misunderstanding as to the goods or services being acquired by Plaintiff. In doing so, Defendants violated the UDTP.

119.   Plaintiff suffered damages as a result of this violation and is entitled to all relief allowed under the UDTP.

## Prayer for Relief

WHEREFORE, Plaintiff Ahmed Baraghith respectfully requests that the Court grant him relief on his claims against Defendants Qargo Coffee, Inc. and Mark Bass as follows:

A.   Rescission of the Franchise Agreements, together with all related and ancillary agreements;

B.   A judgment awarding actual damages in an amount exceeding $75,000.00, exclusive of interest, attorney fees, and costs;

C.   A judgment awarding compensatory damages in an amount exceeding $75,000.00, exclusive of interest, attorney fees, and costs;

D.   A judgment awarding special damages in an amount exceeding $75,000.00, exclusive of interest, attorney fees, and costs;

E.   A judgment awarding enhanced damages in an amount exceeding $75,000.00, exclusive of interest, attorney fees, and costs;

F.     A judgment awarding exemplary damages in an amount exceeding $75,000.00, exclusive of interest, attorney fees, and costs;

G.     An award of restitution;

H.     Pre-judgment and post-judgment interest as permitted under the applicable statute governing the relief awarded, including, without limitation, interest at the rate of 12% pursuant to M.C.L. § 445.1531;

I.      An award of reasonable attorneys' fees and taxable costs pursuant to M.C.L. § 445.1531 and any other applicable statute or court rule; and

J.      Such other and further relief as the Court deems equitable, just, and appropriate.

Respectfully submitted,

/s/ Michael J. Hamblin
Michael J. Hamblin (P61834)
Jonathan M. Sollish (P87812)
Maddin Hauser Roth & Heller, P.C.
Attorneys for Plaintiff
One Towne Square, Fifth Floor
Southfield, Michigan 48076
(248) 354-4030
mhamblin@maddinhauser.com
Date:  March 13, 2026                          arumbus@maddinhauser.com

## JURY DEMAND

Plaintiff Ahmed Baraghith, by and through his attorneys and pursuant to

Rule 38, hereby demands a jury trial in this action.

Respectfully submitted,

/s/ Michael J. Hamblin
Michael J. Hamblin (P61834)
Jonathan M. Sollish (P87812)
Maddin Hauser Roth & Heller, P.C.
Attorneys for Plaintiff
One Towne Square, Fifth Floor
Southfield, Michigan 48076
(248) 354-4030
mhamblin@maddinhauser.com
Date:  March 13, 2026        arumbus@maddinhauser.com

31

4925-8422-2354, v. 1